UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SCOTT BLEVINS and LISA BLEVINS, )
)
        Plaintiffs, )
)
    v. )
) Case No. 3:11-cv-093-PPS
TOWN OF MENTONE, )
OFFICER JIM EADS, and )
OFFICER TERRY ENGSTRAD )
)
        Defendants. )

## OPINION AND ORDER

Plaintiffs Scott and Lisa Blevins claim that excessive force was used against them by Officers Jim Eads and Terry Engstrom of the Mentone Police Department. The defendants now seek summary judgment, but because there are several questions of fact outstanding – the officers tell one story and the Blevinses a decidedly different one – a jury will need to sort this out. Summary judgment will therefore be denied.

## BACKGROUND

On March 5, 2009, the Officers went to the Blevinses' residence to arrest Scott on two felony counts of child molestation. (DE 44-1 at 22-23.) This wasn't the first time that the Officers encountered Scott. Eads stopped him before for driving with a suspended license, and the Officers previously had attended a mixed martial arts match in which Scott was a participant.[1] (DE 44-1 at 69-70.)

---

[1] At this point I should note that the Officers go on to suggest that their awareness of Scott's MMA or "cage fighting" hobby justifies any purported rough treatment. (DE 40 at 19.) But with all due respect to Scott, it doesn't appear that he is particularly good at it. *See* http://www.cagepotato.com/exclusive-interview-scott-lionheart-blevins-cant- be-stopped/. In fact, it appears that he has never won a match.

The Blevinses initially brought a complaint alleging a number of different legal theories, but only their excessive force and battery claims remain. All other claims have been voluntarily withdrawn except that if they are successful at trial, the Blevinses will attempt to hold the Town of Mentone responsible for the actions of the Officers under Indiana state tort law. (DE 42 at 2.) So I'll concentrate only on the facts relevant to the excessive force claim.

When the Officers arrived at the Blevinses' residence, Scott saw them approach. (DE 41-1 at 2.) He was aware by that time that the molestation investigation was focusing on him. (*Id.*) Being fearful of arrest, he hid under his kitchen sink. (*Id.*) The Officers knocked on the Blevinses' door, and after some period of time, Lisa answered it. (*Id.*) The Officers asked if Scott was at home, and she indicated that she didn't know (she had been asleep and did not see Scott take refuge under the sink). (DE 41-2 at 2.) The Officers then entered the house – they say with her consent, the Blevinses say not. (*Id.* at 2-3.)

There is substantial disagreement between the parties as to what happened next. The Officers contend that they smelled marijuana, saw burnt marijuana cigarettes and paraphernalia in the living room, and placed Lisa in handcuffs. (DE 44-1 at 23.) The Blevinses tell a different story. They say that Lisa was entirely compliant but that Eads nonetheless grabbed her, threw her to the floor, and shoved his knee in her back while handcuffing her. (DE 41-2 at 3.) Both parties have produced affidavits and deposition transcripts supporting their accounts of the events.

After securing Lisa, the Officers continued their search of the Blevinses house but could not find Scott, at least initially. At some point they began examining a cell phone belonging to Lisa (though neither party has adequately explained why they came into possession of that

2

phone), when a text message from Scott fortuitously arrived from underneath the sink telling Lisa to inform the Officers that he was at his mother's house. (DE 44-1 at 23; DE 41-2 at 3.) The Officers became suspicious and searched the residence more closely, ultimately locating Scott in the bowels of his kitchen cabinetry. (DE 44-1 at 23; DE 41-1 at 3.)

This brings me to a second substantive factual dispute between the parties. The Officers say that they simply removed Scott from his hiding place, handcuffed him and read him his *Miranda* rights. (DE 40 at 7; DE 44-1 at 23.) The Blevinses, in contrast, assert that the Officers slammed Scott's head into the refrigerator and threw him on the floor. (DE 41-1 at 3.)

At this point, the Officers called in a drug-sniffing dog to help search the premises, and more drug-related contraband was found. (DE 44-1 at 55.) The parties concur that Scott agreed to assist with a hastily improvised drug sting if the Officers would refrain from taking Lisa into custody on drug charges (which could have caused the Blevinses' children to be taken away), though there is some dispute as to who first proposed the arrangement. (DE 44-1 at 23; DE 41-1 at 3.) Scott then called a cousin to arrange a meeting in a Warsaw, Indiana supermarket parking lot so that Scott could purchase marijuana from him. (DE 40 at 8.) The parties disagree as to the precise details of what happened next, but it doesn't really matter for the purposes of this summary judgment motion – everyone agrees that (1) the cousin arrived on the scene in a minivan, (2) Scott approached, and (3) the cousin sped off without exchanging drugs or letting Scott in his vehicle, leaving Scott on foot. (DE 44-1 at 23, 57; DE 41-1 at 3-4.)

And now we get to the third and final – and perhaps most significant – disputed fact in the case. The Officers claim that Scott started to flee, and a foot chase ensued. (DE 40 at 8; DE 44-1 at 67, 73.) They further contend that Scott ran into a large rock with sufficient force to

3

knock himself to the ground. (*Id.*) The Officers say that they then took Scott into custody and transported him to a local sheriff's office. (*Id.*) Scott paints an entirely different picture. He asserts that after his cousin sped off, he began walking a prearranged meeting site in a different nearby parking lot, when he was tackled without warning by Eads. (DE 41-1 at 3-4.) Scott further claims that once Eads forced him to the ground, he kicked him in the stomach several times. (DE 41-1 at 4.) Scott claims that these kicks caused him to suffer serious injuries requiring medical attention. (*Id.*)

Regardless of who is right about the aftermath of the botched drug sting, everyone seems to agree that the Officers then transported Scott to the sheriff's office, where he promptly began complaining of various pains and injuries, leading the Officers to take him to the Kosciusko Community Hospital. (*Id.*; DE 44-1 at 83-93.) There also is no disagreement that the hospital could not discover anything wrong with him and he was discharged. (*Id.*)

After spending six months in jail, the child molestation charges against Scott were dropped, and he was released. (DE 44-1 at 113.) The Blevinses contend that both Scott and Lisa continue to experience various ailments related to their purported mistreatment by the Officers. Specifically, Scott says that he suffers from a hernia that was the result of Ead's alleged kicking, and Lisa complains of chronic back pain that she attributes to being thrown on the ground during the Officers' search of the Blevinses' house. (DE 41-1 at 4; DE 44-2 at 3.)

## DISCUSSION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute about a material facts exists only "if the evidence is such that a reasonable jury

4

could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, I must construe all facts and draw all reasonable inferences from the record in the light most favorable to the nonmoving party. *Id.* at 255. But the nonmoving party is not entitled to the benefit of "inferences that are supported by only speculation or conjecture." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (citations and quotations omitted).

## A.

Before I apply this analysis, I need to address two pending motions. First, the Officers have filed a Rule 56 Motion to Strike. The Officers ask me to strike portions of Scott's affidavit asserting that he currently is suffering from a hernia that was caused by Eads's kicks to the stomach. (DE 43 at 3-4.) The Officers contend that only a medical professional should be permitted to testify as to Scott's medical diagnosis and the cause of any chronic injury that he now claims is afflicting him. (*Id.*) The Officers also seek to strike portions of Scott's affidavit claiming that he hasn't participated in any MMA events since his arrest and claiming that he recognized the Officers when they arrived at his house, arguing that this testimony is contradicted by what he previously said at a deposition. (*Id.* at 4-7.) Finally, the Officers ask me to strike Scott's affidavit testimony that he had heard that they had been bragging about his imminent arrest on the grounds that Scott does not have personal knowledge of that alleged boasting. (*Id.* at 2.)

The last two of these requests are easy to resolve. For the purposes of the pending summary judgment motion, I don't care if Scott has been able to pursue his cage fighting hobby, or if he recognized the Officers when they arrived to arrest him, or whether he knew that they were planning to arrest him. None of those have anything to do with the question of whether the Officers used excessive or unreasonable force on Scott or Lisa. So I'll disregard all of the

5

challenged affidavit testimony because it's not particularly relevant.

The question of precisely what Scott may testify about concerning his purported hernia is more difficult. Courts have a notoriously hard time parsing out generally admissible testimony concerning physical conditions (*e.g.*, "I have a tightness in my abdomen that hurts when I bend this way") from generally inadmissible testimony relaying medical opinions or diagnoses (*e.g.*, "I have an inguinal hernia that requires surgery"). *See, e.g.*, *Holt v. Omstead Tp. Bd. of Trs.*, 43 F. Supp. 2d 813, 819-20 (N.D. Ohio 1998) (explaining the analysis). Fortunately, in this case, I don't need to decide what to let in and what to keep out on this issue, at least for the moment. Scott certainly can testify that he has pain in his abdomen around the place where he says he was kicked. That's enough for a reasonable jury to infer that Scott was kicked as he claims (if they believe him), and any testimony concerning his technical diagnosis or causation is unnecessary. As such, I'll ignore it for now, and the Officers' Motion to Strike is denied as moot.

The second pending motion is the Blevinses' Motion for Leave to File a Sur-Response. In it, they argue that (1) there is sufficient evidence to conclude that the Officers used more than *de minimis* force on Lisa when they restrained her, and (2) the form of the evidence of Scott's and Lisa's alleged assaults – what the Officers call "self-serving affidavits" – should not disqualify them. Both points are well-taken, but it's not necessary to make them in a Sur-Response. With respect to the first, the Blevinses' opposition brief cites evidence that is sufficient for me to evaluate whether the alleged conduct of the Officers rises above the level of *de minimis* force without additional argument; with respect to the second, I'm very familiar with *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003) and its extensive progeny, which (as I'll discuss below) hold that even self-serving affidavits can be enough to defeat summary judgment, provided that they allege facts (and not conclusions) and otherwise comply with Rule 56(c)(4). So there's nothing in the

Sur-Response that is especially new or helpful to me in deciding the pending summary judgment motion, and as such, I'll disregard it. The Blevinses' Motion to File a Sur-Response therefore is also denied as moot.

**B.**

Now I'll turn to the summary judgment analysis. As I alluded to above, I see three possible material disputed factual assertions in this case. First, the Blevinses claim that Eads unnecessarily threw Lisa to the ground and forcefully stuck his knee in her back while handcuffing her, despite the fact that she wasn't resisting them. Second, they assert that the Officers slammed Scott into the refrigerator and threw him to the ground while restraining him after his hiding spot was discovered. Third, the Blevinses contend that after the failed drug sting in the supermarket parking lot, Eads tackled Scott and kicked him in the abdomen while he was lying helplessly on the ground. All of these (disputed) allegations are supported with detailed affidavit testimony, and from what I can tell, none seem to be contradicted by Scott's or Lisa's deposition testimony – at least the Officers haven't pointed me to any such contradiction if there is one. This evidence at least on its face seems to be sufficient to get the Blevinses' claims to a jury.

The Officers assert three basic arguments to explain why that view isn't right. First, they portray the Blevinses' affidavits as "entirely conclusory," and thus insufficient to raise an issue of material disputed fact. (DE 44 at 5-6.) The Officers cite *Reese v. Anderson*, 926 F.2d 494 (5th Cir. 1991), which involved a lawsuit by a deceased robbery suspect's mother claiming that the police were not justified in using deadly force to subdue her son. Her sole evidentiary support for her claim was an eyewitness affidavit testifying that the officer shot into the plaintiff's car despite the fact that it was surrounded and (the affidavit concluded) there was no threat to the officer's life. *Id.* at 499. The Officers argue that a similar result is warranted here.

7

They're right on the law, but wrong on its application. The main problem in *Reese* was that the sole "evidence" indicating that the officer was not under any threat was merely an opinion stating that conclusion. *Id.* There were no specific facts offered in that case to explain *why* the officer shouldn't have felt threatened (*e.g.*, all of the suspects in the car had their hands raised and clearly did not have any weapons). But here the Blevinses are reasonably specific and detailed in their allegations. This isn't a situation where they merely state in a conclusory fashion that the Officers used excessive force against Scott or Lisa – to the contrary, they explain that the Officers (allegedly) threw Lisa down and jammed a knee in her back, slammed Scott's head into a refrigerator, and finally tackled Scott and kicked him in the abdomen. A jury may or may not believe Scott and Lisa, but this isn't purely conclusory testimony by any stretch.

The Officers' second main argument as to why the Blevinses have not raised any material disputed fact is that given the specific circumstances surrounding Scott's arrest – including his initial attempt to hide from them and his subsequent efforts (they claim) to escape on foot – they used a reasonable level of force. They cite *Smith v. City of Chicago*, 242 F.3d 737 (7th Cir. 2007) in which the plaintiff – who had been fleeing from the police – claimed excessive force was used against him when the chasing police officers pinned his arms behind his back, slammed him down against the hood of the car, and handcuffed him. *Id.* at 744. The Seventh Circuit concluded that this level of force was appropriate and even expected under the circumstances. *Id.*

I'll first note that *Smith* really is only relevant to one of the three alleged instances of excessive force in this case. With respect to Lisa, there is no indication that she was attempting to flee or hide from the Officers, and as such, if she was thrown down and forcefully kneed in the back as she claims, a reasonable jury could conclude that this level of force was excessive based on those facts alone. The parking lot incident involving Scott is an even easier call. The

Blevinses contend that he was repeatedly kicked in the abdomen while lying helplessly on the ground. To be sure, the Officers argue that Scott was fleeing from them, but *that's* a disputed fact in and of itself. In other words, one threshold problem with the Officers' argument is that I have to believe the Officers to accept it. And in any event, it's impossible for me to imagine *any* circumstances that would make it reasonable to repeatedly kick an individual as he or she is lying on the ground as the Blevinses claim happened.

But *Smith* arguably could apply to the rough treatment (allegedly) experienced by Scott while the Officers were pulling him out from under the sink. No one disputes that he was attempting to hide from them, after all, and in that scenario, it isn't hard to believe that the Officers might need to use some level of force to extricate and restrain him. That makes it a harder question for me. The one alleged fact that I think gets the claim to a jury is Scott's testimony that the Officers slammed his head into a refrigerator. If they did so intentionally – and not inadvertently while restraining him – then a reasonable jury might conclude that this is another instance of excessive force, even under the circumstances.

The Officers' final argument as to why the Blevinses' affidavit testimony is insufficient to raise an issue of material disputed fact is that these self-serving statements lack credibility, and thus I should disregard them. They first cite *Lahr v. Lawson*, No. S91-150M, 1993 WL 330914 (N.D. Ind. June 16, 1993), in which the court disregarded a plaintiff's deposition testimony because it simply was not credible given the circumstances in the case.[2] *Id.* at *2-3. But that

---

[2] Specifically, the question at issue in *Lahr* was whether the police used excessive force when arresting a man attempting to hide from them in an upstairs closet. The plaintiff claimed that he wasn't trying to hide, but instead had gone to the closet to work on a wiring project – though he didn't have any tools, it was dark, and he had been told by the house's owner not to continue with that project. *Id.* at 3. The court properly concluded that the plaintiff's explanation for why he was in the closet was not credible under those circumstances. *Id.*

9

principle doesn't apply here. There is nothing inherent in the circumstances surrounding Scott's arrest that makes the Blevinses' factual claims facially implausible (except perhaps for the allegation that the Officers might think that it was a good idea to use an accused child molester to participate in an impromptu drug sting before taking him to jail – but of course the Officers haven't disputed that bit). So *Lahr* is not very helpful to them.

This brings me at last to the Officers' overarching implication that the affidavits should be disregarded because they are largely self-serving. This is a curious charge from the outset because one could easily make the same claim about the *Officers'* testimony. So there are two things to say about this. First, these specific and detailed allegations of excessive force are not new theories that the Blevinses just came up with to avoid summary judgment. To the contrary, they have been consistent in their description of the Officers' purported use of excessive force as far back as the second page of their complaint. (DE 1 at 2.) It's true that the only evidence they cite in support of these allegations is their own testimony – but there isn't anything wrong or even unexpected about that.

Second, and more to the point, the Seventh Circuit has long been unequivocal that a party opposing summary judgment can so with a self-serving affidavit, provided that it complies with Rule 56(c)(4) and states actual facts and not merely conclusions to support the nonmovant's claims. *See, e.g., Payne*, 337 F.3d at 771-73; *see also Kellar v. Summit Seating Inc.*, 664 F.3d 169, 175 (7th Cir. 2011); *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 635 (7th Cir. 2011). Indeed, in the oft-cited *Payne* decision, the Court went to great lengths to clarify that even self-serving affidavits can have sufficient probative value to defeat summary judgment:

> We hope this discussion lays to rest the misconception that evidence presented in a "self-serving" affidavit is never sufficient to thwart a summary judgment

10

> motion. Provided that the evidence meets the usual requirements for evidence presented on summary judgment – including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial – a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts.

337 F.3d at 773 (quotations in original).

The fact that the Blevinses' evidentiary support for their allegations consists of largely self-serving affidavit testimony thus can play no part in my summary judgment analysis. If those affidavits state specific and detailed facts showing that there is a genuine issue for trial – and as I discussed above, the Blevinses' affidavits unquestionably do that here – then that will be enough to get their case to the jury.

I'll conclude by stating the obvious: It's not my job at the summary judgment stage to assume the role of factfinder. "Even if one side's story is more believable, the court must 'avoid[] the temptation to decide which party's version of the facts is more likely true. As we have said many times, *summary judgment cannot be used to resolve swearing contests between litigants*.'" *McCann v. Iroquois Mem'l Hosp.*, 622 F.3d 745 (7th Cir. 2010) (*quoting Payne*, 337 F.3d at 770) (emphasis added). Here, there is a *bona fide* factual dispute over what actually happened to Lisa and Scott when Scott was arrested. It will be up to a jury to decide whether the Officers or the Blevinses are to be believed.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the pending motion for summary judgment (DE 40). The pending Motion to Strike (DE 43) and Motion for Leave to File a Sur-Response (DE 47) are also **DENIED** as moot.

**SO ORDERED**.

ENTERED: October 29, 2011.

                                                                      s/ Philip P. Simon
                                                                       PHILIP P. SIMON, CHIEF JUDGE
                                                                       UNITED STATES DISTRICT COURT